Good morning, John Frisell, Ernest Gibson, III. Given the time, I will address the issues of the deliberate ignorance instruction, the Bruton Sixth Amendment violation, and the limitation of cross-examination. But I'll obviously take questions by the court if they want additional direction from me. To start off, to address the big picture of any harm analysis that would apply for each of these issues, the evidence against Ernest Gibson, III, the government in its closing statement, did admit that the evidence against Mr. Gibson, III was mostly circumstantial. Also, Mr. Gibson was not the owner of a clinic that was committing health care fraud. He was the president of a hospital with 300 employees. He ran the radiology department, was in charge of the emergency room, a 98-bed hospital, and these were subcontractors that were running these other PHP service centers. He wasn't the CEO? He was the CEO of Riverside Hospital. My point is that it's distinguishable from cases where you have the owner of an operation that's committing fraud and it's the operation itself that's committing fraud. But here, he was the president and CEO of Riverside Hospital with numerous duties in running the hospital. He took the stand, though, right? Yes, he did. As to sufficiency, that complicates the argument. Are you moving right away to— I do understand that for sufficiency, I'm addressing the harm analysis without conceding sufficiency, but I'm addressing harm analysis for these other issues kind of up front because it's kind of the same. But because he is the president and CEO of a hospital that has these subcontracted units that are run by independent contractors, that is relevant to the harm analysis, if not sufficiency analysis, but I'm focusing on harm analysis, that the strength of the government's case regarding his knowledge— Did he not—oh, you're talking about three, not four. Gibson, three. Gibson, the third, yes. So anyway, on the deliberate ignorance, I basically have two issues there. One is the factual basis for it. The second is the legal—if it's legally correct, given the elements of the statute. Just to jump ahead, just Kimball testifies that your client said, I don't want to know what you all are doing or how. So factual basis seems met. Well, my response to that was that he then next in the transcript did ask, how are you getting your patients? And I understand it's up to the court. Yes, but what's the legal argument? Why couldn't you give a deliberate ignorance instruction? The legal argument is that under this court's precedent in Chin, which I acknowledge was a drug case under 21 U.S.C. 851, that this court said when the knowingly element applied only to the maintenance of the premises, that you could not be deliberately ignorant of the maintenance of the premises but then have the purpose under the second element that drug activities would be conducted there. And my position is that the anti-kickback statute is worded similarly in that it requires that a person knowingly make a payment and with the intent to induce another to make a referral. So if the knowingly element applies to the payment, then you would not be able to be deliberately ignorant that you're making payments but still have the intent that the purpose of that payment was to induce the recipient to refer a patient. Chin's an old case. It hasn't been expanded out of its area. If you just think of the whole body of law as scienter has to be proven, specific intent, but a jury can infer from denials, sort of the charade of denials, that there might be intent. Don't the two just fit together like that? Well, I'd like to respond to both of those. I think it raises two issues. The first, what was the first? Well, I said Chin's pretty old. Right. I would say that this court in Shoemaker, which is recent, I forget the year, it's in our briefs, that that's a recent case and it defined the elements of the anti-kickback statute as requiring the intent under both elements. Correct. The second, response to the second point, is that those challenges to specific intent usually mean that the person, they only have to prove one element, one actus reus, and that they did it with the specific intent. But here you're having to prove the actus reus of the payment, but that they also intended that that payment would induce. And also a lot of the cases addressing, I think in the anti-kickback statute, where people have said or argued that deliberate ignorance instruction was inappropriate were based on the willful element and the argument that where a statute requires that a person act willfully, but that's a different argument than what we're making here. My additional point would be that under Chin and this court's definition of the elements under Shoemaker, that this would be plain error because the court's made clear what the elements are. And also in the harm analysis of that, it goes both to the count one health care conspiracy to commit health care fraud and the conspiracy to commit the anti-kickback statute fraud, or conspiracy to violate that statute. Because the conspiracy to commit health care fraud was the object of that conspiracy charge was to submit false claims and to pay kickbacks for patients. Since you just have a minute, do you want to hit your next biggest reversal? My next biggest one would be the introduction of codefinite excuse statements of payments from Riverside. And Mr. Gibson was synonymous with Riverside in the context of this case. The jury was informed that he was the president and CEO of Riverside during Vordaer and opening. And what's your closest case where the defendant wasn't actually mentioned or redacted from a statement? Actually, the government's brief cites Espinoza saying – I'm going to mispronounce it. It's 862 F. Second, 526. And – oh, wait. I'm sorry. There was another one. It's in your brief. I'm sorry. There was one – it may be Powell, but there was one where it alluded to the defendant. In your rebuttal, would you touch briefly on that subject on Bruton and Nanda and how you would distinguish that here? May it please the Court. Gregory Sherwood representing the appellant Ernest Gibson IV. I've raised four issues in Mr. Gibson IV's brief, but I intend to only focus on one during the argument, the question of whether the 240-month sentence and conviction for conspiracy to commit money laundering merged with the conspiracy to commit health care fraud conviction. I argue if that is the case – I have a question right at the outset about that argument, the remedy. Let's say you're right that there was a merger. You seem to assume that would require vacating the money laundering, which has the 20-year sentence. That's why you don't want the money laundering between the two. What rule would tell us which one to vacate if the money laundering and the health care fraud merged? Well, I thought the case law was clear on that. I got a little hung up on this in the Caroline Najoku case that I argued a few years ago, which discussed multiplicity. Multiplicity, the remedy is you get rid of the lesser conviction, which would help in the state system if you had parole, but in the federal system it just lessens the number of convictions. I thought the case law was clear that when merger occurs, the greater conviction and sentence would be erased. I didn't think there was any question about that, but if I've missed something – Merger is not an objection you have to raise pretrial? In other words, it's distinct from multiplicity? Yes. The case law says yes, because multiplicity you have to raise that pretrial. In fact, the court discussed that. Merger only becomes apparent depending on the government's proof? That's all right. No, that's a good question. I'm not sure if it – yes, the proof is one element of it, but I suppose it could be raised pretrial. That would enable the government to amend the indictment because the government is – When did you in this record – I'm just interrupting because your time is so quick. When did you object in a record site or a brief site to the – on the ground that merger occurred with the substantive offenses? There is no objection in the district court record, and I state in the brief that plain error review has to apply to this. But did you bring that up in the principal brief even? Yes, I believe I did. Okay, on the substantive offenses. Those seem more problematic to me because the conspiracies both don't require overt acts, correct? Yes. If I understand your question correctly, are you saying that the government seemed to argue in its brief that because we've pleaded two separate conspiracies and we did not plead the underlying activity, then there's no merger problem. I didn't explain this very well in the reply brief as I looked at the case last night. There is a pleading of the underlying activity because the conspiracy to commit health care fraud, it names four possible ways to do it, and B as in boy, paying kickbacks to persons in exchange for sending Medicare beneficiaries to the PHPs. The conspiracy to commit money laundering count, which is 13, count 1 and count 13, that discusses money laundering, and it says, and this is at page 7 of my brief where I try to summarize, the manner and means of the conspiracy alleged was that Medicare would electronically transfer funds into hospital bank accounts controlled by Gibson III as payment for claims by Medicare for PHP services. Gibson III would transfer the funds into Devotion's PHP bank accounts, and both Gibsons paid a portion of the funds from the Medicare fraud scheme to pay patient recruiters and group health care homeowners in exchange for them sending patients to Riverside or Devotions. And we also have conspiracy to pay kickbacks, and we have two substantive kickbacks. So if the government's claiming that there's no merger problem because we pleaded this correctly, that's not so because the Medicare You go ahead. I was thinking the conspiracy for the Medicare fraud is over when they agree. If they agree to rob the government, then the proceeds pay for the patients. That's the kickback theory. So it continues the fraud, but the predicate, the problem with money laundering, you know, in these merger problems is when the money laundering becomes the predicate instead of this chronological clear nexus. Yes, and there's cases that talk about, well, this conspiracy ended here and this conspiracy started here. It's kind of a forest and trees argument. I'm looking at the forest of the conspiracy, the conspiracies which all are alleged to have occurred between January 2005 to June 2012. We have the same time frames for all these conspiracies. The government is looking at it, looking at the trees. Did you get a multiple conspiracy instruction? I don't remember. I don't remember. Go ahead. You go ahead. Well, real quickly, to me, the way I analogize this is in state court we have indecency by child with a contact and indecency by exposure. And you cannot be convicted of both exposure and contact if they're the same act because one subsumes the other. To me, this is pleading all the same thing, and the government is converting one crime into two crimes. And on rebuttal, I will discuss the government's argument and try to raise one point that I wanted to make with regards to the restitution issue. Thank you. May it please the court, Ellen Meltzer for the United States. I'd first like to address Gibson III's argument on money laundering merger and then turn to Gibson IV's argument on deliberate ignorance. To be clear, count 13 of the government's indictment charged that Mr. Gibson III and Gibson IV conspired to commit promotion money laundering by knowingly conducting a financial transaction which involved the proceeds of a specified unlawful activity, that unlawful activity being 18 U.S.C. 1347 healthcare fraud. It's important to the merger analysis that it be clear that the indictment did not charge any separate 1347 counts. Gibson IV's complaint that there was a merger between the money laundering conspiracy and his conviction for healthcare fraud conspiracy does not have merit for two separate reasons. The first being that under the law of this circuit, merger is a concept that applies only where the indictment charges a specified unlawful activity as a separate offense and proof of that offense is also sufficient to prove the money laundering either substantive count or conspiracy, which is what we charged here. In other words, there's no clear delineation between the two offenses. So that logic would mean you could never have a merger problem with a conspiracy, Medicare conspiracy and a money laundering conspiracy, right? Well, we didn't charge a money, excuse me, a Medicare fraud conspiracy as the SUA. We charged just the healthcare fraud offense itself. Right. So then you couldn't ever have a merger problem as you charged it. That's correct, Your Honor. And there is no authority and Mr. Gibson IV has not provided any for this court to find merger of two offenses where one of them has not been charged as the SUA. And this case is on all fours with the Limeberry case from this circuit where the defendant was neither charged nor convicted of the SUA underlying the money fraud. The money laundering promotion counts. There's no risk of merger, therefore, and there's no possibility of the double jeopardy as there was in Santos. But there's a second reason why there's no merger here. And that's because this case is similar to the Kennedy case from this circuit. I believe in that case the SUA was wire fraud where the laundering of proceeds involved transactions that were separate from and occurred after the SUA. Kennedy distinguishes miles, right? That's correct, Your Honor. Is miles sort of an aberration from your nationwide perspective? This is only the second time that I've had an appeal involving money laundering, so I can't really answer that question. I'm sorry, Your Honor. As this court said in Sandjar, health care fraud focuses on submitting false claims. And this court recognized in the Sandjar case that that can occur independent of any kickbacks. So here the SUA of health care fraud was complete before the money laundering occurred. That involved the transfer of proceeds that had been received from Medicare to the defendants and to devotions. Even if you had charged substantive health care fraud offenses, which is also the SUA, you'd still be arguing there's no merger? I think we would be fine, Your Honor, yes. But we're certainly okay because we didn't even charge any in the indictment. And your argument would be that the health care fraud is separate from the transaction that's the basis for the money laundering? Yes, Your Honor. I don't know if the court has any more questions on the merger. I guess money laundering sufficiency was not addressed just now. I don't know if the court has any questions on that. The only point that I'd like to make is that we disagree with what Gibson IV is saying is the standard of review. It should be manifest miscarriage of justice because his claim was not properly preserved below. So his argument below was that the court should rule 29B count because the government had not traced the money and hadn't shown that dirty money was being used to pay the kickbacks. That's totally different than the argument that he's making here. As far as deliberate ignorance is concerned, there was more than an ample factual basis for the deliberate ignorance instruction. Mr. Gibson III claimed from the very beginning that he lacked guilty knowledge of filing the false claims and of the payment of kickbacks and that he was far removed from the daily operation of the PHPs. That's not what the evidence in this case shows. The evidence shows that he was in a position of authority, which this court has said can support an inference of knowledge. Not only was he president and CEO of Riverside, but the managers of all the PHPs reported to him. He hired and he trained Lawrence Willis, who was over at the Southeast PHP. He reviewed and he approved the contracts for the psychiatrists and for the doctors. He even signed some of the marketing contracts for the recruiters. And he personally approved the recruiters that Mr. Willis hired. He also, there was not only evidence of deliberate ignorance, but there was a lot of evidence of actual knowledge, which would make any error in giving the deliberate ignorance instruction harmless. He profited. Miss, you're still talking about number three. Yes, Your Honor. Yes, Gibson III. He objected to the deliberate ignorance instruction? Yes. And then Judge Rosenthal tailored it just to him? Yes, it was only given as to him. And I think she characterized it something like this is the quintessential deliberate ignorance case. So you're already an oral argument opponent. The issue is sort of Chen and how much does Chen explain? And as Your Honor has recognized, Chen has not been followed in this circuit. And it's been limited to the rule, excuse me, the Title 21 offense, which was the subject of it. This court has always given deliberate ignorance and approved deliberate ignorance instructions and specific intent crimes. And in fact, all three of Your Honors were on the panel in the United States v. Hunter in 2015, which approved the deliberate ignorance instruction for conspiracy to pay kickbacks and for substantive . . . But Chen wasn't raised in that case. Have you seen Chen raised in any kickback case in which deliberate ignorance . . . No. No, I have not, Your Honor. I mean, my bigger issue, I've been on at least, seems like almost one every time I sit, but at least four healthcare fraud cases in the last year. You mentioned Sanjar was one of them. And in at least three of those four, a deliberate ignorance instruction was given. And so it seems to me we're just . . . it's just not the case what we repeatedly say that this should rarely be given, if it's almost becoming the rule and not the exception, at least in these healthcare fraud cases. And I recognize Judge Rosenthal distinguished between defendants and only gave it as to one. But if DOJ's healthcare fraud group is asking for this, as far as I can tell, in basically every healthcare fraud case involving a doctor or the owner of a facility, what's left of our view that this is a rarely given instruction? I don't know what's being given in every case. I certainly have seen the Court's opinions approving the giving of the instruction. I don't know how many other cases are out there where we don't ask for it or where the Court rejects it. But I think in this case in particular, where Gibson III is trying to distance himself from the fraud and from the operation of the PHPs, it's absolutely appropriate to give it. Because there wasn't just evidence of actual knowledge, although there was plenty of that. But there was certainly evidence of circumstantial evidence of his knowledge of the fraud. With all of the evidence given about his not being deliberately indifferent in all the specifics that he was involved in, doesn't that cut against the confrontation claim? Because if he was that involved, then evidence of what the corporation did is hardly distinguishable, it seems to me, under Nance. Those were owners, not CEOs. If I understand your question correctly, Your Honor, there was some evidence of deliberate knowledge, excuse me, of actual knowledge, such as he knew that some of the patients did not qualify for PHP treatment because he reviewed the audit reports that had comments such as, take out mental retardation, take out Alzheimer's. He was aware that his son's PHP was overbilling. But there were also a lot of indicia which was more a reasonable jury could infer his knowledge, and there wasn't direct evidence of his knowledge. What intrigues me about the question is, doesn't the deliberate ignorance justification bleed into the Bruton problem, which is if this guy was the alter ego of everything, then the line of authority post-Richardson that's saying it's got to be facially incriminating to run into Bruton, isn't he as close to that when they say Riverside, everyone would know Riverside is Gibson Sr.? I don't think that this court has decided any cases where somebody is the head of a corporation or head of a hospital or head of anything else, where the person is not either directly or indirectly implicated in a statement, and the court finds a Bruton violation. There simply isn't any in this circuit that I know of. So, you know, I guess you can make the argument that it does bleed into the Bruton argument, but there's no authority for finding a violation. What is our latest and best authority in terms of a sufficient redaction, oh, an inference has got to be made, therefore no Bruton? Is it probably the ones you cite in the brief? Probably in the brief. What about Nance? I suppose Nance denied it because the confrontation clause denial because that was the owner or owners. And it sounds to me like this is distinguishable on the facts you have argued for the deliberate indifference. I'm sorry, but the case is not registering with me. Could you hear? It's Nanda, N-A-N-D-A, but it's a 2017 case, not cited. I apologize, Your Honor. I'm not familiar with it. I don't know if the Court wants me to give more evidence on either actual knowledge or what would fall under the deliberate ignorance section for an inference of knowledge, but there's plenty of both. What would help me, Mike, and it's a little unfair to you to have to anticipate a question that a lawyer has said he may bring up for the first time in a rebuttal argument, but could you just jump to the restitution issue a teeny bit? If devotions had some legitimate services, would a sentencing judge be obligated to offset? Not when, as Judge Rosenthal found, there was no way of parsing out the little bit that might have been legitimate from everything that, the pervasiveness of the fraud in this case, and it certainly was pervasive at devotions. The, for starters, I think they're also wrong on the standard of review, because the objection below was not that only $3.2 million should be the amount of restitution. The objection below was only that some of the beneficiaries may have received treatment, and counsel below arbitrarily asked that the court deduct $500,000 from the $7.5 million that was received by Riverside for devotions billings. It's not the same argument that's occurring here. And again, there's just no authority for the court to say that devotions caused $7.5 million of receipts for claims by Riverside, but only $3.2 million should be the restitution amount, because that's all that actually went back to devotions and went back to gifts in the fourth. I just want to see if I have any other points on restitution. The other thing that I'd like to say about the fact that there, the argument that there may have been some legitimate therapy, and if there was, it was awfully little. It's his burden, not the government's burden, to show what amount was legitimate, and he never met his burden in proving an offset for purportedly legitimate services. Unless the court has questions on any other issues, we'll rest on the brief. Thank you. The court had asked a question about the Bruton issue and the best case on that. That, I relied on a Third Circuit case. The government cited in its brief, I'm probably going to mispronounce this, but United States v. Behar Urias, that's 165F3337. That's 1999 from this circuit. And it says that where the link between the statement and the defendant is apparent when admitted, without consideration of additional evidence, it violates Bruton. And the court held that where the defendant's name was replaced with someone, the court held that even with the defendant's name redacted and replaced with someone, that that was a facially identified, that facially identified the defendant. Here, Gibson III was the face of Riverside Hospital. He was the only person on trial that was an employee of Riverside Hospital. Are you familiar with this, the Nanded decision? I am not. I am not. I apologize. And as to the opposing counsel brought up, that even if there was error in giving the deliberate ignorance instruction, that it was harmless in light of the evidence because there was evidence of actual knowledge. But this court does hold that the deliberate ignorance instruction can be harmless error if there's evidence of actual knowledge, but it requires substantial evidence of actual knowledge. So it's different from the sufficiency of the evidence standard of reviewing that. So going back to when I started, here the government conceded during its closing argument that the evidence was mainly circumstantial. Most of these facilities were run by independent contractors, and there was a lot of dispute about whether Mr. Gibson's actions were, the government's view was that they were a cover-up in furtherance of the fraud. Mr. Gibson's view was, no, I was trying to ensure compliance. Thank you. Thank you. Your Honors, if the government is correct in its theory on the merger issue, then every conspiracy can be transformed into a conspiracy to commit money laundering if the government pleads the indictment correctly. And that means everybody is going to be facing a 20-year sentence, and I just don't think, I would ask the court to think about that as it considers this case. The government also says that the substantive underlying act was not pleaded. I argued in my initial that the kickbacks was the substantive underlying activity. If the government had left kickbacks out because it pleaded substantive kickbacks on two dates, conspiracy to commit those same two kickbacks on those two dates, if it had left that out, then their pleading argument would be stronger. But we have kickbacks in the substantive and conspiracy charges. We have kickbacks as one of the four ways to commit conspiracy to commit health care fraud, and we have kickbacks pleaded in the conspiracy to commit money laundering. So we have kickbacks everywhere. Therefore, I think there is a merger problem. Kickback is a separate statutory crime, isn't it? It is a separate statutory crime, but it is also a way to commit conspiracy to commit health care fraud. And apparently it's a way to commit a conspiracy to convict money laundering fraud. So, I mean, if the court's going to say because they're two separate statutes that's okay, then I don't have any response to that. My argument is we're going to transform everything into money laundering conspiracy statutes, conspiracy convictions in order that we can bump up the punishment to 20 years. The standard of review disagreements I've argued in my initial brief and reply brief, and my time has expired. Thank you very much.